**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GWENDOLYN A. FLOWERS | : | |
| 77 East Pike Street, 3108 | : | |
| Lawrenceville, GA 30046 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: |
| | : | |
| v. | : | |
| | : | |
| DELTA COMMUNITY SUPPORTS, INC. | : | **JURY TRIAL DEMANDED** |
| 720 Johnsville Blvd., Suite 700 | : | |
| Warminster, PA 18974 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CIVIL ACTION COMPLAINT</u>

Gwendolyn A. Flowers (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff has initiated this action to redress violations by Delta Community Supports, Inc. (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").  As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## <u>JURISDICTION AND VENUE</u>

2.      Plaintiff resides in and is a citizen of Georgia.

3.      Upon information and belief, Defendant Delta Community Supports, Inc. is incorporated under the laws of Pennsylvania with headquarters and/or principal place of business in the same, rendering it a citizen of Pennsylvania.

4. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Georgia, and Defendant is a citizen of Pennsylvania, and the amount in controversy exceeds $75,000.

5. This Court also has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under Title VII and Section 1981. There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

6. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

8. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

9. Plaintiff has also properly exhausted her administrative remedies regarding her

PHRA claims by waiting at least one year since the filing before asserting her PHRA claims.

## PARTIES

10.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.    Plaintiff is an adult individual, with an address as set forth in the caption.

12.    Delta Community Supports, Inc. is a Pennsylvania corporation offering comprehensive support for adults with developmental disabilities, foster care, and adoption, located at the above-captioned address.

13.    At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

14.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15.    Plaintiff is a Black (African) female from Liberia.

16.    Plaintiff was employed by Defendant for approximately 8 years, from on or about September 12, 2016, until her unlawful termination (discussed further *infra*) on or about December 5, 2024.[1]

17.    Plaintiff was hired originally as a Direct Support Professional ("DSP").

18.    Plaintiff was then promoted to a Residential Coordinator on or about November 20, 2022, working from Defendant's group home located at 191 Magnolia Drive, Levittown, PA 19054.

---

[1]During her 8-year period of employment with Defendant, Plaintiff resigned on or about November 14, 2021, to care for her mother but was rehired on or about February 2, 2022, as a Direct Support Professional.

19.    At the time of her termination, Plaintiff was primarily supervised by Assistant Director, Patrick Garwo (Black/African, hereinafter "Garwo") and Regional Director, Wendy Didomenico (Caucasian/American, last name unknown, hereinafter "Didomenico").

20.    Throughout Plaintiff's employment with Defendant, she was a hard-working employee who performed her job well and without issue until Defendant came under new management in or about 2022/2023.

21.    During the last approximate 1-2 years of her employment, when Defendant came under new predominantly Caucasian upper management, it was clear that the Caucasian management favored Caucasian/American and/or African American employees, as Plaintiff and other African employees were subjected to disparate and discriminatory treatment by management because of their race, ancestry, ethnicity and/or national origin.  By way of example, but not intended to be an exhaustive list, unlike her Caucasian/American and/or African American co-workers:

   a. Plaintiff and other African employees were treated in a rude and demeaning way and regularly talked down to;

   b. Regional Director, Jennifer Cator (Caucasian/American, hereinafter "Cator") informed several employees that Didomenico "does not like Africans, and she will make sure that she gets rid of any Africans";

   c. On at least one occasion, Didomenico hostilely informed Plaintiff that "Africans are too arrogant and think they know it all," to which Plaintiff objected replying that she was not arrogant but rather had a lot of experience in the field and being African has nothing to do with it; and

d. African employees were issued pretextual discipline and or terminated for manufactured or minor issues, while Caucasian/American and/or African-American employees were given warnings or minor discipline for far worse infractions (*i.e.*, at least one African American employee cursed at a Caucasian Director, was off the schedule and a no-call no show for weeks, and then quit, but Defendant allowed her to return to work shortly thereafter).

22. In addition to the foregoing instances of disparate and discriminatory treatment toward African employees, Defendant has engaged in a clear, concerted, and documented pattern of placing African employees on unpaid administrative leaves without any specific communication as to why or any updates during said leaves, and then terminating each of them for the same vague and/or baseless reasons such as "financial exploitation and unprofessional behavior."

23. For example, in or about August of 2024, Garwo and another African Resident Coordinator, Michael Sackie (hereinafter "Sackie"), were placed on administrative leave and ultimately terminated for "financial exploitation and unprofessional behavior," which was completely untrue.

24. Thereafter, and in a similar fashion as Garwo and Sackie, on or about November 11, 2024, Plaintiff was placed on unpaid administrative leave without being provided any reason as to why.

25. For the next several weeks, Plaintiff reached out to Defendant's management and Human Resources ("HR") as to why she had been placed on administrative leave, and when she could return to work, but Plaintiff was given the runaround and informed that someone would call her back, but they never did.

26.    Because Plaintiff could not continue to financially support herself and her family while Defendant had placed her on an unjust and unpaid leave, Plaintiff finally filed for unemployment in or about the end of November of 2024.

27.    Because Plaintiff needed to provide information to unemployment, she then went in person to Defendant on or about December 3, 2024, to again inquire as to why she had been placed on administrative leave and the status of her employment, at which time Defendant's management informed Plaintiff that they had sent her documentation, which Plaintiff had never received.

28.    Thereafter, in or about early December of 2024, Plaintiff finally received a letter backdated to November 20, 2024, stating that she had been placed on administrative leaving pending an investigation.

29.    Not only had she never received this letter, but it was dated some 9 days after Plaintiff had been placed on administrative leave.

30.    Additionally, notably, in the November 20, 2024 administrative leave letter, Plaintiff was advised that "[d]uring the investigation, you will be extended the opportunity to provide any information you would like to be considered while we review this matter." However, Plaintiff was never provided with a reason for the investigation, much less the ability to provide any information regarding the alleged infractions.

31.    Thereafter, on or about December 5, 2024, Plaintiff was abruptly terminated by phone and emailed a letter from Defendant stating that she had been terminated for "financial exploitation and unprofessional behavior," which is patently untrue, completely pretextual, and further evidence of Defendant's clear scheme to terminate African employees for no other reason but their race, ancestry, ethnicity and/or national origin.

32.     It was not until Plaintiff further engaged in the unemployment process that she was informed for the first time that she was terminated for allegedly stealing resident groceries after shopping for the Levittown, Pennsylvania location on or about November 10, 2024.

33.     Not only is this patently false, but Plaintiff had a reputation within Defendant of making the residents' money go a long way with grocery shopping, finding the best deals, and obtaining a large quantity of food for the money spent.

34.     Specifically, when grocery shopping and pursuant to Defendant's policies, Plaintiff was informed that she and other employees would use their assigned credit card (of Defendant's) to purchase groceries and household items, and upon return to the house, would put the portion of the receipt that that shows the total price of items on a piece of paper, scan the paper, and submit that paper to management as proof of grocery purchase.

35.     For the alleged incident in question, on or about November 10, 2024, Plaintiff and another co-worker Caregiver, Lisa Kollie (African, hereinafter "Kollie") purchased groceries, submitted the receipt, and put away groceries according to Defendant's policies and as they had done **dozens** of times before, with no objection or complaint by Defendant.

36.     Upon their return to the house following their purchase of groceries on November 10, 2024, Plaintiff and Kollie put all of the groceries and household items away in several storage places (as was normal) including the deep freezer, fridge, multiple cabinets, snack cabinet, on the resident tables, and in the cleaning supplies cabinet.

37.     The following day, or about November 11, 2024, Associate Director, Quinetta Hays (African American, hereinafter "Hays") then abruptly came to the house and began acting in a completely unprofessional and discriminatory manner with Plaintiff by questioning her about the location of the groceries she and Kollie had purchased the prior day.

38.     When Plaintiff responded to Hays that the groceries were put away properly using methods that had been done numerous times before, Hays merely checked **one** location where food was put away and proceeded to conclude that, because all of the food on their submitted receipt was not in one cabinet, Plaintiff must have stolen the remainder.

39.     In reality, the majority of the alleged groceries had been placed in the freezer and other areas where Hays failed to look and which Kollie witnessed and for which Plaintiff has photographic proof, which she obtained after Hays' bizarre and hostile interaction with her.

40.     Rather, Didomenico made good on her concerted promise that "she will make sure she gets rid of any Africans" by terminating Plaintiff (and her aforementioned African colleagues before her)[2] for completely manufactured and pretextual reasons.

41.     Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and terminated because of her race, ancestry, ethnicity, and/or national origin and her objections to/complaints of discrimination based on the same.

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**([1] Race, Ancestry, Ethnicity Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, and a hostile work environment through hostility, animosity, and demeaning and/or derogatory comments and treatment (discussed *supra*) because of her race, ancestry, and ethnicity.

---

[2] Kollie, another African employee, was similarly targeted and also terminated just a few months after Plaintiff.

8

44.     Plaintiff objected to/complained of the race, ancestry, and ethnicity-based discrimination she was subjected to, but Defendant failed to take any meaningful action regarding these concerns.

45.     Plaintiff was ultimately terminated on or about December 5, 2024, for completely pretextual reasons.

46.     Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of her race, ancestry[3], and ethnicity[4] and/or for her objections to/complaints of race, ancestry, and ethnicity-based discrimination and retaliation.

47.     Plaintiff further believes and therefore avers that but for her race, ancestry, and ethnicity, she would not have been terminated from her employment by Defendant.

---

[3] It is very well established that Section 1981 protects all individuals because of their (1) <u>race</u>; (2) <u>ancestry</u>; and (3) <u>ethnic characteristics</u>, and an individual's appearance and physical characteristics are completely irrelevant to a claim under the statute. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that intentional discrimination based solely on a person's ancestry or ethnic characteristics is racial discrimination that Congress intended Section 1981 to forbid)*; see also Vill. of Freeport v. Barrella,* 814 F.3d 594, 598 (2d Cir. 2016) (*holding discrimination based on Hispanic ancestry or lack thereof constitutes racial discrimination under Section 1981)*; *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir. 1987)(reversing grant of summary judgment and holding that Puerto Ricans constitute a race as defined by Section 1981*);see also Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed. Appx. 656 (8th Cir. 2009) (finding European Slavic plaintiff states a cause of action under Section 1981 for harassment because of his ancestry and accent); *Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998) ("[t]he prohibition against racial discrimination [codified in Section 1981] encompasses discrimination based on ancestry or ethnic characteristics"); *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387, n.7 (10th Cir. 1991) (noting that the concept of race under § 1981 is broad, extending to matters of ancestry which are normally associated with nationality, not race in a biological sense); *Smith v. Specialty Pool Contractors*, 2008 WL 4410163, at *4 (W.D. Pa. 2008) ("Persons of Jewish ancestry are a distinct race and, therefore, within the protection of 42 U.S.C. § 1981" (citing *Al-Khazraji,* 481 U.S. at 611-13)); *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 374 (E.D.N.Y. 2000) (holding section 1981 applies to discrimination on the basis of Italian ancestry); *Ganthier v. North-Shore Long Island Jewish Health System, Inc.,* 345 F.Supp.2d 271, 281 (E.D.N.Y. 2004) (Spatt, J.) ("Under Section 1981, 'race' includes ancestry and ethnicity.").

[4] *See Al-Khazraji*, 481 U.S. at 613 (holding the matter of race must be considered broadly and noting the understanding of "race" in section 1981 includes groups "who might be deemed Caucasian today," such as Swedes, Norwegians, Germans, Greeks, Finns, Italians, Russians, Arabs, Spaniards, Hungarians, etc.); *Vodopwec v. Anthony's LLC*, 2018 U.S. Dist. LEXIS 129446, *9-10 (D.N.J. 2018) ("Courts have interpreted "race" for purposes of section 1981 to include "ancestry or ethnic characteristics" (quoting *St. Francis College*, 481 U.S. at 613); *Quintana v. Byrd*, 669 F. Supp. 849 (N.D. Ill. 1987) (finding that plaintiff's allegations of discrimination based on her ethnic characteristics, as opposed to her country of origin, was sufficient to state a cause of action under Section 1981).

9

48.    These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race and/or National Origin Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

49.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.    During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, pretextual discipline and a hostile work environment through disparate treatment as outlined *supra* because of her race and/or national origin.

51.    Plaintiff objected to/complained of the aforementioned instances of race and national origin discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

52.    Plaintiff was then terminated for completely pretextual reasons on or about December 5, 2024.

53.    Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of her race and/or national origin and her objections to/complaints of race and/or national origin discrimination.

54.    Plaintiff also believes and therefore avers that her race and/or national origin were motivating and/or determinative factors in the termination of her employment by Defendant.

55.    These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

## COUNT III
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### ([1] Race and/or National Origin Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

56.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.    Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC), and the charge has been pending for at least one year.

58.    The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims as set forth in Count II.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

11

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: April 30, 2026

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Gwendolyn A. Flowers | : | CIVIL ACTION |
| v. | : | |
| Delta Community Supports, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| | | |
|---|---|---|
| 4/30/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:   Defendants place of business

---

***RELATED CASE IF ANY:***   Case Number:_____   Judge:_____

1.   Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2.   Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3.   Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.   Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
     individual?

5.   Is this case related to an earlier numbered suit even though none of the above categories apply?          Yes ☐
     If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.   *Federal Question Cases:***

☐   1.   Indemnity Contract, Marine Contract, and All Other Contracts)
☐   2.   FELA
☐   3.   Jones Act-Personal Injury
☐   4.   Antitrust
☐   5.   Wage and Hour Class Action/Collective Action
☐   6.   Patent
☐   7.   Copyright/Trademark
☐   8.   Employment
☐   9.   Labor-Management Relations
☒   10.  Civil Rights
☐   11.  Habeas Corpus
☐   12.  Securities Cases
☐   13.  Social Security Review Cases
☐   14.  Qui Tam Cases
☐   15.  Cases Seeking Systemic Relief  **\*see certification below\***
☐   16.  All Other Federal Question Cases. *(Please specify):*_____

**B.   *Diversity Jurisdiction Cases:***

☐   1.   Insurance Contract and Other Contracts
☐   2.   Airplane Personal Injury
☐   3.   Assault, Defamation
☐   4.   Marine Personal Injury
☐   5.   Motor Vehicle Personal Injury
☐   6.   Other Personal Injury *(Please specify)*:_____
☐   7.   Products Liability
☐   8.   All Other Diversity Cases:  *(Please specify)*_____
          _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

FLOWERS, GWENDOLYN A.

## DEFENDANTS

DELTA COMMUNITY SUPPORTS, INC.

**(b)** County of Residence of First Listed Plaintiff    Gwinnett
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent – Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    [X] Yes    [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    4/30/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____